## BLUE BIRD MINING CO. v. KELLY et al.

Court of Appeals of Kentucky.
March 9, 1951.

M. B. Fields, Hazard, for appellant.
Clark Pratt, Hindman, for appellees.

LATIMER, Justice.

Herman Kelly, 31 years of age, was employed by appellant as a hostler on a coal cutting machine used in one of appellant's mines. On August 29, 1946, while performing his regular duties for his employer, an electric cable attached to the machine caught fire and it became necessary, in order to continue production, for him to splice and repair the cable in a room filled with smoke emanating from the burning rubber insulation. The work required from 15 to 30 minutes to complete. All other employees left the room while the cable was being repaired. After Kelly spliced and repaired the cable, he emerged from the mine, coughing violently. The coughing continued throughout the night and he complained of a burning sensation in his throat and a pain in his neck. He was unable to swallow solid foods. He worked two or three shifts thereafter, but was ordered to the hospital by the company doctor on September 4th. While in the hospital, he was treated by Doctor Albert B. Morgan who testified that he is an eye, ear, nose, and throat specialist. Doctor Morgan diagnosed the case as septic sore throat, placed him on a liquid diet, administered penicillin, and prescribed throat irrigations. Doctor J. M. Ray was called on one occasion and prescribed medicine to induce relaxation and sleep. Kelly died September 7th at 3:35 a. m. Previous to the accident he was an able-bodied man and had experienced no disability. His widow, in her own behalf and as guardian of Kelly's children by a previous marriage, filed claim for death benefits under the Compensation Act. It is conceded that Kelly was covered by the Act, but defense was asserted on the grounds (1) appellees did not meet the burden of proving the deceased died of an accidental injury, and (2) they did not prove dependency. The Board found for the claimants and on appeal the award was affirmed by the Circuit Court.

Appellees did not introduce any medical testimony, relying solely on the circumstances we have related to prove that death resulted from the inhalation of noxious gases. One of the theories of appellant is that the death of deceased was the result of an overdose of sleeping capsules, but Doctor Morgan, who testified for it, eliminated this as a cause.

On direct examination, Doctor Morgan stated that the deceased's death was not caused by the inhalation of poisonous gases. He gave the following testimony on cross-examination:

"Q. What treatment did you prescribe for him? A. I prescribed the use of penicillin—I gave an order of 25,000 units every 3 hours—and irrigation of the throat every 3 hours with dakins solution.

"Q. What are the results usually of penicillin treatment, does it usually clear this throat trouble up? A. As a usual thing it does. It will clear up an infection if it is the type of infection which is sensitive to penicillin.

"Q. This is the treatment that is usually given for septic sore throat? A. Yes.

"Q. Have you had experience of treating men who have come in contact with smoke from burning machine cables, powder, dynamite, and other things in coal mines? A. Yes.

"Q. Does that have any effect on the throat and lungs? A. It causes them to cough when they come in contact with it.

"Q. Does that cough usually continue for several hours afterwards? A. It depends on the amount and time of exposure.

"Q. Smoke from a burning cable, would that cause some irritation in the throat or not? A. It would act as a foreign body in the throat and cause coughing.

"Q. What was the appearance of Herman Kelly's throat? A. He had a red and inflammed throat, a congested and inflammed throat.

"Q. Is there more than one type of what we call sore throat? A. Oh yes.

"Q. In all cases the throat is usually red and inflammed. A. Yes sir.

"Q. A foreign substance such as cable smoke if an individual should remain in the smoke for 25 to 30 minutes would cause his throat to become red and inflammed? A. That would depend on the amount of smoke and the length of time the person came in contact with it.

"Q. Assuming that the smoke was very dense— A. Wait a minute—I don't assume anything—it either is or isn't. I don't answer a question with the word assume in it. There is no such word as assume in my vocabulary. I object to the use of that word by any lawyer.

"Q. What you mean to say is that you will not answer any question in a deposition in which certain facts are assumed to be true? A. They either are or are not true. There is no such word as assume in my vocabulary. Either it is true or it isn't true."

Doctor Morgan did not give his opinion as to the cause of Kelly's death nor as to the cause or type of infection in Kelly's throat nor did he give any reason whatever for his conclusion that the inhalation of the smoke had no connection with Kelly's death. He was extremely hostile in his attitude while undergoing cross-examination as the testimony we have quoted demonstrates. The medicine he used to treat his patient did not check the progress of the infection. From this fact, the board could have concluded that the doctor may have erred in his diagnosis, and that the poisons which irritated the throat were noxious gases which may have affected the lungs and even have found their way into the blood stream in sufficient quantities to cause death. The symptoms of illness occurred simultaneously with the happening of the accident and continued progressively—culminating in death. The circumstances before, at the time of, and after the accident establish an almost air tight causal connection between the happening of the accident and the death of the decedent. Where the uncontradicted sequence of events casts doubt upon the correctness of the diagnosis of physicians, such evidence presents an issue of fact to be determined by the board. Ellis v. Litteral, 296 Ky. 287, 176 S.W.2d 883 and cases therein cited.

The contention that claimants failed to prove their dependency is utterly without merit. KRS 342.075 provides that a widow, who has not voluntarily abandoned her husband, and the minor children of a deceased employee shall be deemed to be wholly dependent upon him. Mrs. Kelly testified that she was the widow and that Bonnie Jean and Magline Kelly, 7 and 5 years of age respectively, were the children of her deceased husband by a former

marriage. That testimony established dependency. Hosman Coal Company v. Carr, 228 Ky. 786, 16 S.W.2d 167.

The judgment is affirmed.